207 So.2d 459 (1968)
Laurie D. HOOKS, Appellant,
v.
STATE of Florida, Appellee (three cases).
Nos. 67291-67293.
District Court of Appeal of Florida. Second District.
January 31, 1968.
Petition for Clarification and Modification Denied March 13, 1968.
*460 Robert E. Jagger, Public Defender, and Carleton L. Weidemeyer, Asst. Public Defender, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Judge.
The above appeals are from separate judgments revoking previous orders of probation in three separate criminal cases and entering adjudications of guilt and concurrent sentences to the State Prison.
Appellant Laurie D. Hooks, in February, 1966, was charged in the Pinellas County Circuit Court with the offense of forgery in each of three informations, to which he pleaded guilty and was placed on probation for a period of three years. The original probation order, covering all three cases, was entered on March 31, 1966.
Thereafter, on April 4, 1967, another information was filed in the same Court against Hooks, charging him with breaking and entering the Elks Club building in Pinellas Park with intent to commit grand larceny. On May 4, 1967, after trial upon this information, the jury found him not guilty. Immediately after the verdict was published in open Court, Judge McNulty stated:
"The defendant * * * will be remanded to custody notwithstanding the acquittal. He is on probation from this Court on another offense. Right? * * While the evidence must be sufficient to persuade the Jury beyond every reasonable doubt in this case, it doesn't necessarily follow that the Court need be persuaded beyond a reasonable doubt that he may have violated this probation. We are going to cite him for an Order to Show Cause why his probation ought not be revoked for the charge under which he has been placed on probation. And we will serve him and counsel with this Order in the morning."
On May 11, 1967, Hooks was charged with violating his previous probation order of March 31, 1966, by having committed the Pinellas Park offense, of which he had been acquitted.
On May 16, 1967, the Public Defender's office on behalf of Hooks filed suggestion, pursuant to F.S. Sec. 38.02 F.S.A., that Judge McNulty "should be disqualified" as Judge at the revocation hearing because he was "necessarily a material witness", and this was followed up by a witness subpoena summonsing the Judge to appear at the hearing on June 1, 1967.
On May 18, 1967, Judge McNulty entered order sua sponte which, after reciting the jury acquittal and the filing of the suggestion for disqualification and further reciting that 
"* * * notwithstanding the jury verdict aforesaid, the Court is personally persuaded, having heard all the evidence *461 in that case, that there is more than a preponderance of evidence, if not proof beyond a reasonable doubt, that the Defendant is guilty of the offense charged; and it further appearing, by reason of the foregoing, that there is probable cause to believe that the Defendant has violated condition (h) of the Order of Probation requiring that the Defendant `live and remain at liberty without violating any law'; * * * and the Court further finding that the suggestion for disqualification is without foundation in law or fact; * * *"
 thereupon summarily denied the suggestion for disqualification and also motion for jury trial on the question of identity, and ordered Hooks to appear on June 1, 1967 to show cause why the previous probation order should not be revoked.
On May 29, 1967, the State Attorney filed motion to quash the witness subpoena aforesaid, which motion was granted by Judge McNulty at the inception of the revocation hearing on June 1, 1967. The Court minutes recite that defendant "having stated to the Court he was not guilty of the alleged violation; and the Court having made inquiry therein after due notice to said defendant, finds that the defendant has violated the terms and conditions of his probation", whereupon the Judge revoked probation and entered judgment of conviction and sentence in all three cases.[1]
We find it unnecessary to go into the question of whether probation can be revoked because the trial Judge believes the probationer has committed a "crime" during his probation, despite his trial and acquittal of that same "crime", because reversal is impelled upon two procedural aspects, viz: (1) error in the Judge refusing to disqualify himself, and (2) failure to accord the probationer the full revocation hearing to which he was entitled. We will take these up in order.

(1) Disqualification of the Judge.

F.S. Sec. 38.02, F.S.A. provides in pertinent parts as follows:
"In any cause in any of the courts in this state any party to said cause, * * may * * * show by a suggestion filed in the cause that the judge before whom the cause is pending, * * * is a material witness for or against one of the parties to said cause, * * * If the truth of any suggestion appear from the record in said cause, the said judge shall forthwith enter an order reciting the filing of the suggestion, the grounds of his disqualification, and declaring himself to be disqualified in said cause."
The ground for the suggestion of Judge McNulty's disqualification was that he was (tracking the statute) "a material witness for or against one of the parties to said cause" namely, the probationer Hooks. That he was considered a material witness is evidenced by the fact that he was subpoenaed as such. That he might not prove to be a material witness at the hearing is another question. That could be dealt with later. At the time the disqualification suggestion was filed, the presumption must be indulged that he was such a material witness, whether he himself thought so or not.
This is not to say that, in any given case, the summonsing of a Judge as a witness, without any semblance of grounds therefor, would be tolerated when the true situation should thereafter develop. There would be positive ways to then handle the matter  and not the precipitate way in which it was dealt with here.
One of the oldest and most salutary rules governing judicial disqualification is *462 that the Judge whose disqualification is sought, for whatever statutory reason it might be suggested, cannot himself judge the truth of the grounds for his disqualification as, to do so, he would be sitting in judgment as to his own competency to act.
As the Supreme Court said in State ex rel. Mickle v. Rowe, 1931, 100 Fla. 1382, 131 So. 331:
"`Every litigant * * * is entitled to nothing less than the cold neutrality of an impartial judge.' It is the duty of courts to scrupulously guard this right of the litigant and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit and place the judiciary in a compromising attitude which is bad for the administration of justice." (Emphasis supplied).
And as the same Court held in Kells v. Davidson, 1931, 102 Fla. 684, 136 So. 450:
"The safe and sound rule is that, when the record once shows that a judge is disqualified in a cause, it becomes his duty to certify such disqualification, transfer the cause to some other qualified judge, and thereafter take no part in the disposition of the cause."
In Power v. Chillingworth, 1927, 93 Fla. 1030, 113 So. 280, the Supreme Court held that 
"[d]isqualification to adjudicate a cause rests on the ancient maxim that no man should sit as a judge in his own case. This maxim is applicable to all classes of cases and in all courts, and appeals so strongly to one's sense of justice that it was said by Lord Coke to be a natural right, so inflexible that an act of Parliament seeking to subvert it would be declared void."
In the case sub judice, after the jury brought in its verdict in the criminal case, the trial Judge clearly indicated that he thought Hooks was guilty regardless of the verdict. In this state of the case, it is not inconceivable that Judge McNulty could have been a "material witness" at the revocation hearing.
But we need not go that far here. Counsel for Hooks had stated in writing that the Judge would be a material witness at the revocation hearing. It was not then the province of the Judge to determine the truth or falsity of that statement. When that statement was made as a ground for disqualification, the Judge thereupon, ipso facto, by operation of F.S. Sec. 38.02, F.S.A., became legally disqualified. He should not thereafter have sat in judgment upon Hooks's revocation of probation.

(2) The Hearing.

The revocation hearing consisted of a running colloquy between the Court and counsel for the accused. The Judge was unquestionably sincere in his belief that Hooks was guilty of the criminal charge of which the jury had acquitted him. And he seemingly was intent upon "rectifying the jury's mistake". It was a new version of non obstante veredicto. In his sua sponte order denying the suggestion for disqualification he recited that Hooks had been 
"* * * found not guilty; but notwithstanding the jury verdict aforesaid, the Court is personally persuaded, having heard all the evidence in that case, that there is more than a preponderance of evidence, if not proof beyond a reasonable doubt, that the defendant is guilty of the offense charged * * *"
F.S. Sec. 948.06, F.S.A. charts the course for a probation revocation hearing, as follows:
"Whenever within the period of probation there is reasonable ground to believe that a probationer had violated his probation in a material respect, any parole or probation supervisor may arrest such probationer without warrant wherever *463 found, and forthwith shall return him to the court granting such probation * * The court, upon the probationer being brought before it, shall advise him of such charge of violation and * * * [i]f such charge is not at said time admitted by the probationer and if it is not dismissed, the court, as soon as may be practicable, shall give the probationer an opportunity to be fully heard on his behalf in person or by counsel. After such hearing, the court may revoke, modify or continue the probation."
The statute presupposes two procedural prerequisites before a probation may be revoked: (1) the probationer is entitled to a "full hearing", and (2) such hearing must precede any revocation.
The record is conclusive of this state of facts: the Judge had presided at the criminal trial wherein the jury had acquitted Hooks; as Judge therein, he had heard the testimony of the witnesses; notwithstanding the verdict, he himself was convinced of Hooks's guilt; in his own mind reposed the reasons he was so convinced; he was going to conduct the revocation hearing; and he was not going to submit himself as a witness.
Under such circumstances, what kind of "hearing" could the probationer have? The answer is just what he did have  no hearing at all. Assuming for the sake of argument that his guilt of the criminal charge would alone constitute valid grounds for violation of probation, not a word of testimony regarding the facts was adduced. The hearing was just a wrangle between the Court and counsel, winding up with both the probationer and his lawyer being sentenced to jail by the Judge.
The statutory requirement of a "full hearing" is a condition precedent to a revocation. Phillips v. State, Fla.App. 1964, 165 So.2d 246; Brill v. State, 1947, 159 Fla. 682, 32 So.2d 607; McNeely v. State, Fla.App. 1966, 186 So.2d 520. And that, of course, presupposes a hearing upon the grounds of violation. Due process of law demands such a hearing, without which the revocation order lacks constitutional, as well as statutory, vitality.
The probationer Hooks did not have the "revocation hearing" to which he was entitled.

(3) Jury trial on the question of identity.

In State ex rel. Roberts v. Cochran, Fla. 1962, 140 So.2d 597, the Supreme Court stated:
"A trial by jury [in a revocation proceeding] is not required, save perhaps in the isolated situation where the probationer places in issue his identity as the perpetrator of the act allegedly violative of the probation order." (Emphasis supplied).
Hooks did not testify in his criminal trial wherein he was acquitted, nor did he produce any other witnesses in his behalf The sole issue submitted to the jury was the identity of Hooks as the perpetrator of the breaking and entering of which he was accused. And he rested upon the insufficiency of the State's evidence to prove that issue. The jury, by its verdict, of necessity found it was insufficient.
Later, when the revocation proceeding came along, the factual issue there was the same as at the criminal trial, namely, the identity of the probationer. Therefore, the case came squarely within the pronouncement in Cochran aforesaid.
Assuredly it was dicta in the Cochran case, and inclusion of the word "perhaps" additionally does not make the holding definite and fixed. But Justice Thornal does point out the area within which "perhaps" a jury trial is proper, and that area was present here. This could well be the "isolated situation" contemplated.
Some authorities say that the question of identity triable by jury means "identity with the person originally sentenced", 24 C.J.S. Criminal Law § 1618 *464 (11) p. 913 (citing one case from New Mexico), but we think the "identity" should, just as appropriately, extend to "the perpetrator of the act allegedly violative of the probation order", to use the language of Cochran.
It is obvious, from what we have hereinbefore said, that the revocation order must be reversed, and upon remand to the Circuit Court the case should be assigned to another Judge, and Hooks accorded a full hearing, such Judge to be not impeded in making any ruling not inconsistent with this opinion.
Reversed and remanded.
ALLEN, Acting C.J., and SHANNON, J., concur.

ON PETITION FOR CLARIFICATION AND MODIFICATION
PER CURIAM.
The State petitions this Court to "clarify and modify" the following language in our opinion:
"* * * Counsel for Hooks had stated in writing that the Judge would be a material witness at the revocation hearing. It was not then the province of the Judge to determine the truth or falsity of that statement. When that statement was made as a ground for disqualification, the Judge thereupon, ipso facto, by operation of F.S. Sec. 38.02 F.S.A., became legally disqualified * * *".
This quotation is taken out of context, and conveys a different meaning than when considered in connection with the Court proceedings attendant upon the filing of the suggestion, as reflected in our full opinion. As we said in Booth v. Mary Carter Paint Company, Fla.App. 1966, 182 So.2d 292, "general statements of law in an opinion must be given such weight only as the facts in that particular case warrant".
F.S. Section 38.02, F.S.A. provides that "if the truth of any such suggestion" appears from the record, the Judge shall enter an order "declaring himself to be disqualified", but if the truth of the grounds does not so appear, "the judge may * * * require the filing * * * of affidavits touching the truth or falsity" thereof. Here, as we stated in our opinion, the trial Judge "summarily denied the suggestion for disqualification" by "finding that the suggestion * * * is without foundation in law or fact * * *" (Emphasis supplied). So instead of requiring "the filing * * * of affidavits touching the truth or falsity of such suggestion", the Judge simply forthwith denied it.
The ground for disqualification was that the Judge was "necessarily a material witness" at the revocation proceeding, and this was followed by issuance of witness subpoena for the Judge. The language of the suggestion follows the language of Section 38.02, which provides, as a ground for disqualification, that "said judge is a material witness for or against one of the parties" to the cause. The suggestion ("tracking the statute" as we said) stated a positive ground for disqualification, and therefore could not fairly be said to have been "without foundation in law".
As our opinion sought to make clear, this does not mean that a litigant has a "free ride" to disqualify a Judge by merely quoting a ground of disqualification from the statute. There are ways of handling such situation, the first of which would obviously be to require filing of affidavits as the statute provides, and proceeding from that point on. And if it developed finally that the ground asserted was wholly "without foundation in fact", the Judge could then refuse to disqualify himself, and the offender could be appropriately dealt with by contempt or other disciplinary, even punitive, proceedings.
But where the Judge, upon the suggestion being filed in the language of the *465 statute, summarily denies it as having no "foundation in law", without even according a hearing to the litigant or his lawyer, he in legal effect concedes the suggestion regardless of how he otherwise characterizes it.
Any other implication that may have been drawn from the portion of our opinion hereinbefore quoted will be considered as qualified and superseded by our instant comments.
With the foregoing explanation the State's petition is denied.
LILES, C.J., and ALLEN and PIERCE, JJ., concur.
NOTES
[1] On June 2, 1967, the Judge also "sua sponte" found Hooks's Public Defender counsel, Terry A. Furnell, in contempt of Court for procuring the witness subpoena directed to the Judge, and sentenced the attorney to a fine or imprisonment.