**Richard Lee MORGAN,**
**Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Secretary of the Dept. of Offender Rehabilitation and Jim Smith, Attorney General of the State of Florida, Respondents-Appellees.**

No. 80–5453.

United States Court of Appeals,
Eleventh Circuit.

May 17, 1982.

Richard G. Pippinger, Tampa, Fla., for petitioner-appellant.

Eula Tuttle Mason, Deborah A. Osmond, Asst. Attys. Gen., Tampa, Fla., for respondents-appellees.

Before FAY, ANDERSON and CLARK, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The appellant, Richard Lee Morgan, a prisoner in the Florida State Penitentiary System, filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Florida. On the report and recommendation of a magistrate, the district court summarily dismissed Morgan's petition. Morgan appeals to this court raising the sole question presented in his petition for habeas corpus: Whether the due process clause or equal protection clause requires a state to impanel a jury to determine a disputed question of identity in a probation revocation hearing. Finding that Florida's refusal to afford Morgan a jury in such proceedings did not violate any of his constitutional rights, we affirm the order of the district court.

## I. FACTS AND PROCEEDINGS

Morgan originally pled guilty to two counts of robbery and was placed on probation for two concurrent terms of fifteen years. During his probationary period, Morgan was charged by his probation supervisor with the commission of another robbery. Morgan denies that he committed this third robbery, and he requested at his probation revocation hearing that the court impanel a jury to determine this disputed issue of identity. The court denied this request, and, after a factual hearing, found that Morgan had committed the robbery. The court revoked Morgan's probation and sentenced him to two consecutive terms of life imprisonment.

Morgan appealed the revocation order to the Florida District Court of Appeals, again raising his claim of a right to a jury on the question of identity. The district court of appeals denied Morgan's claim, expressly rejecting language in an earlier opinion that suggested such a right to a jury might exist in Florida, and affirmed the order of revocation. *Morgan v. State*, 352 So.2d 161 (Fla.Dist.Ct.App.1977). Morgan thereafter sought federal habeas corpus relief.[1]

---

1. The appellee does not challenge that Morgan exhausted his state remedies. We are uninformed as to whether Morgan has pursued or may still pursue state habeas relief. *See*

*Doescher v. Estelle*, 616 F.2d 205, 207 (5th Cir. 1980). Since exhaustion is not a jurisdictional requirement, but rather a matter of federalism and comity, *Hopkins v. Jarvis*, 648 F.2d 981,

## II.  DUE PROCESS

■ Morgan's major argument for requiring a jury to determine questions of identity in a probation revocation hearing is grounded on the due process clause of the Fourteenth Amendment.  The due process clause undoubtedly imposes some restrictions on the power of states to revoke summarily a probationer's conditional liberty. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).  In delineating the bounds of these restrictions, we are mindful of the guidelines laid down by the Supreme Court in the *Gagnon* and *Morrissey* cases.

In *Gagnon* and *Morrissey*, the Supreme Court confronted the questions of what procedural safeguards the Constitution requires for, respectively, probation and parole revocation proceedings.  The state had revoked the conditional liberty of the petitioners in *Gagnon* and *Morrissey* without providing those petitioners with even the most minimal hearing.  In holding that such action offended the due process clause, the court set forth "the minimum requirements of due process."  These requirements include:

> "(a) written notice of the claimed violations of [probation or] parole;  (b) disclosure to the [probationer or] parolee of evidence against him;  (c) opportunity to be heard in person and to present witnesses and documentary evidence;  (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); *(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers;* and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole."

*Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)) (bracketed material inserted by *Gagnon* Court) (emphasis added).  Although neither case directly raised the issue of a right to a jury in a probation revocation proceeding, the Court's view that "a 'neutral and detached' hearing body such as a traditional parole board," satisfies the minimum requirements of due process which seem to bear adversely on Morgan's claim.

The *Gagnon* and *Morrissey* opinions evidence a concern for safeguarding the liberty interests of the probationer and the parolee without encumbering state revocation hearings with unwieldy and impractical procedural requirements.  *Morrissey* acknowledged that "[g]iven the previous conviction and the proper imposition of conditions, the state has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole."  408 U.S. at 483, 92 S.Ct. at 2601.  In setting forth the due process requirements of the "informal hearing" envisioned by the Court, the Court stressed:

> We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense.  It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.
>
> .     .     .     .     .
>
> We have no thought to create an inflexible structure for parole revocation procedures.  The few basic requirements set out above, which are applicable to future revocations of parole, should not impose a great burden on any State's parole system.  Control over the required proceedings by the hearing officers can assure that delaying tactics and other abuses sometimes present in the traditional adversary trial situation do not occur.  Obviously a parolee cannot relitigate issues determined against him in

983 n.2 (5th Cir. 1981), we need not and do not here address any exhaustion issue not raised by

the parties, and we therefore decide this case on the merits.

other forums, as in the situation presented when the revocation is based on conviction of another crime.

*Id.* at 489–90, 92 S.Ct. at 2604–05.

The Court in *Gagnon* again expressed reluctance to allow the due process clause to convert probation revocation proceedings into full-fledged criminal trials. In declining to adopt a per se rule requiring appointed counsel for all indigent probationers in revocation hearings, *Gagnon* observed that attempts to mold revocation proceedings into a criminal trial might distort the probation process and its aims:

> The role of the hearing body itself, aptly described in Morrissey as being "predictive and discretionary" as well as factfinding, may become more akin to that of a judge at a trial, and less attuned to the rehabilitative needs of the individual probationer or parolee. In the greater selfconsciousness of its quasi-judicial role, the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate rather than to continue nonpunitive rehabilitation. Certainly, the decisionmaking process will be prolonged, and the financial cost to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial.

> .    .    .    .    .

> [D]ue process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed.

411 U.S. at 787–88, 93 S.Ct. at 1762–63. The Court further noted that "there are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences." *Id.* at 788–89, 93 S.Ct. at 1763. Among the differences between criminal trials and probation revocation proceedings that the Court contrasted was the presence of a lay jury in the criminal context and the reliance on a "hearing body . . . familiar with the problems and practice of probation" in the revocation proceeding. *Id.* at 789, 93 S.Ct. at 1763.

■ Thus, the language and reasoning of *Gagnon* and *Morrissey* reveal that the Court did not contemplate a jury as one of the due process requirements in a probation revocation hearing. Indeed, the administrative and rehabilitative considerations that the Court found persuasive as a countervailing state interest strongly militate against imposing a constitutional jury requirement. The presence of a jury would probably entail the need for some sort of formalized rules of evidence—precisely what *Gagnon* and *Morrissey* denied would be necessary. 411 U.S. at 789, 93 S.Ct. at 1763; 408 U.S. at 489, 92 S.Ct. at 2604; concomitant with using a jury would be voir dire, jury instructions, and other cumbersome procedures. The task of supervising a jury would perhaps create in the hearing body the most heightened "self-consciousness of its quasi-judicial role," thereby undermining the rehabilitative goals of the probation system. We must recall that furthering the reintegration of the probationer into society, and not discovering and punishing his every transgression (*i.e.*, a criminal prosecution), is the primary function of the probation supervision process. As the Court in *Gagnon* noted, an informal hearing to consider probation revocation or other corrective measures is consistent with these aims, a full-fledged criminal jury trial is not. *See* 411 U.S. at 788–89, 93 S.Ct. at 1762–63.

■ Morgan points out that *Gagnon* and *Morrissey* only set forth the "*minimum requirements of due process*" and that *Gagnon* recognizes that in some circumstances more (*e.g.*, appointed counsel) may be required. Morgan urges us that his case is unique, and that it presents such special circumstances as would constitutionally necessitate the additional procedural safeguard of a jury. We have difficulty perceiving how Morgan's case is unique. Morgan denies that he violated the conditions of his probation and contests the identification of him as the perpetrator of the robbery. Since the state bears the burden of proving facts sufficient to justify the revocation of probation, in many cases the pro-

bationer could dispute the alleged violation of his probation conditions and place the question of identity in issue. *See Morgan v. State*, 352 So.2d 161, 162 (Fla.Dist.Ct. App.1977). Moreover, Morgan has offered no reason, nor can we conceive of one, why questions of identity in a probation revocation hearing should be any more entitled to a jury determination than other factual issues underlying other legal defenses (*e.g.*, lack of the requisite *mens rea*, legal justification or excuse, insanity). If we were to hold that Florida is required to provide Morgan with a jury in his probation revocation hearing, we would be hard-pressed to distinguish a myriad of other cases. Such a result would contravene the reasoning of *Gagnon* and *Morrissey*.

There is, however, a procedural aspect of Morgan's case that might suggest an apparent distinction from *Gagnon* and *Morrissey* and that merits some discussion. The statement of the state court proceedings contained in Morgan's original pro se[2] brief might be read to suggest that the hearing at which Morgan's probation was revoked also served as a sentencing hearing. The appellee quite properly points out that the record on appeal before us does not contain an account of the state court proceedings and, as such, Morgan's reference is to matters outside of the immediate record. Yet, we can take cognizance of the fact that, as a matter of law, Florida criminal procedure does not permit the "[p]ronouncement and imposition of sentence of imprisonment ... upon a defendant who is to be placed on probation," but instead provides that pronouncement and imposition of sentence

shall follow a hearing revoking probation. Fla.R.Crim.P. 3.790 (West 1975). *See State v. Griffith*, 331 So.2d 313, 316 (Fla.1976). The apparent significance of whether or not Morgan was sentenced at this hearing is that *Gagnon* and *Morrissey*, in support of their decisions, reasoned that probation (and parole) revocation, as distinguished from probation revocation coupled with sentencing "is not a stage of a criminal prosecution." *Gagnon v. Scarpelli*, 411 U.S. at 782, 93 S.Ct. at 1759. *See id.* at 781–82, 93 S.Ct. at 1759; *Morrissey v. Brewer*, 408 U.S. at 480, 92 S.Ct. at 2599. Indeed, in contrast to *Gagnon* and *Morrissey*, *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), held that since sentencing is a stage of a criminal prosecution, a defendant has a per se right to appointed counsel at a combined probation revocation and sentencing hearing. *Cf. Gagnon v. Scarpelli*, 411 U.S. at 781–82, 93 S.Ct. at 1759 (*Mempa* revocation and sentencing hearing is a stage in a criminal prosecution, but a mere revocation hearing is not); *Morrissey v. Brewer*, 408 U.S. at 480, 92 S.Ct. at 2599 (same).

■■ Nevertheless, even assuming that Morgan's hearing was for the dual purposes of probation revocation and sentencing, this does not strengthen his constitutional claim[3] to a jury nor does it render the rationale of *Gagnon* and *Morrissey* any less applicable. The law is well-established that the accused is not entitled to a jury in every criminal proceeding. *E.g.*, *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (juvenile delinquency proceedings); *District of Columbia v. Clawans*, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed.

**2.** Morgan proceeded pro se before the district court and continued in that capacity to file a notice of appeal, an original appellate brief, and a reply brief. When this case was scheduled for oral argument, the court appointed counsel for Morgan and ordered supplemental briefing by counsel.

**3.** Counsel for Morgan expressly (in brief and at oral argument) did not raise any claim of a Sixth Amendment right to a jury. The *Mempa* case rested in part on the Sixth Amendment and thus any attempt to distinguish *Gagnon* on this ground would appear to be a Sixth Amendment argument (*i.e.*, probation revocation alone

is not a stage in a criminal prosecution and therefore the Sixth Amendment does not apply; but revocation plus sentencing is part of the criminal prosecution and therefore there is a Sixth Amendment right to a jury). We cannot perceive any difference between whether this argument is denominated a Sixth Amendment and due process claim or simply a due process claim. Regardless of how the argument is styled, the imposition of a sentence at a probation revocation hearing does not give a probationer any greater constitutional claim to a jury than he otherwise would have for that revocation hearing.

843 (1937) (petty offenses); *Raines v. Alabama*, 552 F.2d 660 (5th Cir.), *cert. denied*, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977) (youthful offender determination); *Jones v. United States*, 327 F.2d 867 (D.C. Cir.1963) (en banc) (sanity hearing in death penalty sentencing); *Ogden v. United States*, 323 F.2d 818 (9th Cir. 1963), *cert. denied*, 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964) (hearing on production of Jencks Act material); *United States v. H. E. Koontz Creamery, Inc.*, 232 F.Supp. 312 (D.Md.1964) (double jeopardy hearing); *United States v. Lodewijkx*, 230 F.Supp. 212 (S.D.N.Y.1964) (suppression hearing). Moreover, the former Fifth [4] and other circuits have regularly held that a criminal defendant has no constitutional right for a jury to determine his sentence. *Clark v. Blackburn*, 605 F.2d 163, 166 (5th Cir. 1979); *Turnbough v. Wyrick*, 551 F.2d 202, 203 (8th Cir.), *cert. denied*, 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977); *James v. Twomey*, 466 F.2d 718, 721 (7th Cir. 1972); *Parrish v. Beto*, 414 F.2d 770, 772 (5th Cir. 1969), *cert. denied*, 396 U.S. 1026, 90 S.Ct. 606, 24 L.Ed.2d 522 (1970); *Payne v. Nash*, 327 F.2d 197, 200 (8th Cir. 1964); *Hoyland v. United States*, 304 F.2d 853, 855 (7th Cir. 1962). *But see United States v. Kramer*, 289 F.2d 909, 921, 922–23 (2d Cir. 1961). Indeed, as a matter of federal and state practice, juries traditionally do not participate in the sentencing process. Moreover, Morgan claims that the state must impanel a jury for the limited purpose of determining merely the factual question of identity—he does not demand that the jury decide the ultimate issue of whether to revoke his probation if he is indeed found to have violated the terms of his probation. We therefore have difficulty seeing how the eventual possibility of sentencing affects in any way Morgan's asserted interest in having a jury decide the narrow factual question of whether he committed the robbery in question. That Morgan may have been sentenced at the same hearing in which his probation was revoked does not enhance his asserted constitutional entitlement to a jury.

■ We therefore hold, following *Gagnon* and *Morrissey*, that Morgan has no constitutional right to a jury determination of the identity issue in his probation revocation hearing. This decision is consistent with the conclusions of other circuits that have confronted this question. *See United States v. Segal*, 549 F.2d 1293, 1298–99 (9th Cir.), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977); *United States v. Nagelberg*, 413 F.2d 708, 710 (2d Cir. 1969); *United States v. Lewis*, 475 F.Supp. 156, 157 (E.D.Mich.1979).

### III. EQUAL PROTECTION

■ Morgan also contends that even if he has no federal constitutional right to a jury at his revocation hearing, Florida, as a matter of state law, does confer such a right on some probationers, and the state's failure to provide one in his case violates the equal protection clause of the Fourteenth Amendment. Our answer to this claim is two-fold: First, our examination of Florida law leads us to conclude, as urged by the appellee, that no such right to a jury exists in Florida for any probationers. Second, even if Florida does provide for juries in some cases, the state has established no classifications that violate the Fourteenth Amendment.

Morgan has cited to us in support of this claim a handful of Florida opinions which, at most, suggest in dictum that a trial judge might impanel an advisory jury where the probationer denies that he committed the act alleged to violate his probation. In *State ex rel. Roberts v. Cochran*, 140 So.2d 597 (Fla.1962), the Florida Supreme Court granted habeas relief to a minor whose probation was revoked based solely on an invalid conviction for a subsequent offense. In generally reviewing probation revocation hearing procedures, the court noted in passing that "[a] trial by jury is not required, save perhaps in the isolated

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

situation where the probationer places in issue his identity as the perpetrator of the act allegedly violative of the probation order." *Id.* at 599. Shortly after *Cochran,* however, the Third District Court of Appeals flatly rejected a probationer's claim that he had a right to a jury at his revocation hearing. *Drayton v. State,* 177 So.2d 250, 252 (Fla.Dist.Ct.App.1965), *cert. dismissed and ruling adopted,* 181 So.2d 348, 349 (Fla.1966). The *Cochran* dictum was revived in *Hooks v. State,* 207 So.2d 459 (Fla.Dist.Ct.App.1968), which reversed a probation revocation order on the ground that the trial judge should have disqualified himself. The court noted Hooks' denial that he had committed the act in question, and commented that "[t]his could well be the 'isolated situation' contemplated" by *Cochran. Id.* at 463. Significantly, in remanding the case, the *Hooks* court did *not* order the trial judge to impanel a jury. *See id.* at 464. Moreover, the *Hooks* language was expressly rejected in Morgan's own state court appeal which again directly held that a probationer was not entitled to a jury trial. *Morgan v. State,* 352 So.2d 161, 162 (Fla.Dist.Ct.App.1977). The cases decided in the period between *Morgan* and *Hooks* uniformly have held that no such right to a jury exists in Florida. *Bonds v. State,* 318 So.2d 521, 522 (Fla.Dist.Ct.App. 1975); *Heath v. State,* 310 So.2d 38, 39 (Fla.Dist.Ct.App.1975), *rev'd on other grounds,* 343 So.2d 13 (Fla.1977), cert. denied, 434 U.S. 893, 98 S.Ct. 269, 54 L.Ed.2d 179; *Beasley v. State,* 310 So.2d 37, 38 (Fla.Dist.Ct.App.1975); *Singletary v. State,* 290 So.2d 116, 121–22 (Fla.Dist.Ct.App.), *cert. dismissed,* 293 So.2d 361 (1974). *Singletary* allowed that "a trial judge would have authority to use an advisory jury to determine a disputed issue of fact, such as

identity, in a revocation hearing," but concluded that "no provision of constitution, statute, or court rule requires it and the trial judge did not err in denying the appellant's motion for a jury trial on the issue of identity." 290 So.2d at 121–22. In *Beasley,* the court pronounced that "[t]his question should be laid to rest . . . [and] thought . . . [that it] had done so in the case of *Singletary v. State.* " 310 So.2d at 38. *Heath* summarily dismissed a claim for a jury trial on the issue of identity as having "no merit." 310 So.2d at 39.

Thus, Morgan has cited us no case that held a probationer entitled to a jury at a revocation hearing nor any case where a jury was in fact provided.[5] Our review of Florida law leads us to conclude that no such right presently exists in Florida and that Morgan has not been treated in this regard differently than any other probationer. In the absence of any proof that another probationer has received or could receive a benefit which Morgan has been denied, we perceive no discrimination or violation of the equal protection clause. Moreover, to the extent that any probationer might ever be afforded a jury in a probation revocation hearing, this is at best a matter left on a case-by-case basis to the discretion of the court holding the hearing. Morgan has made no claim or showing that the state has drawn any impermissible lines or made any classifications whatsoever. Nor has Morgan claimed or shown that he was arbitrarily denied a jury which in other cases was provided to others similarly situated. Without proof, or even an argument, that the court in exercising this discretion has made impermissible, arbitrary, or irrational distinctions, we find that Morgan has

5. Our own research has uncovered a few Florida decisions, more than 70 years old, that in dictum have said that " '[i]f the prisoner denies that he is the same person who was convicted, sentenced, and pardoned, he is *entitled* to have a jury summarily impaneled to try such issue; but if his identity is not denied, all the other facts and issues can be heard by the judge alone, unless the judge, solely in his discretion, shall see proper to submit the facts to a jury for determination.' " *Carraway v. State,* 58

Fla. 15, 51 So. 142 (1909) (emphasis added). *See State v. Horne,* 52 Fla. 125, 42 So. 388, 393 (1906); *Ex parte Alvarez,* 50 Fla. 24, 39 So. 481, 484 (1905). These cases have not been cited since for the proposition that some "probationers" (*i.e.,* those who deny that they are in fact on probation) are entitled to a jury trial. We remain unconvinced that Florida has ever put into practice the procedures suggested by this dictum.

not been denied the equal protection of the laws. A contrary rule would call into question a vast array of decisions left to the discretion of the hearing tribunal (*e.g.*, sentencing) and is without support in law.[6]

## IV. CONCLUSION

In sum, Florida did not violate any due process or equal protection right of the petitioner when it refused to impanel a jury at his probation revocation hearing. We therefore hereby affirm the district court's dismissal of the petition for a writ of habeas corpus.

AFFIRMED.

---

6. The cases cited by Morgan for his equal protection claim are wholly inapposite. *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), and *Gomez v. Miller*, 341 F.Supp. 323 (S.D.N.Y.1972) (three judge district court), *aff'd without opinion*, 412 U.S. 914, 93 S.Ct. 2728, 37 L.Ed.2d 141 (1973), involved challenges to New York state procedures for commitment of the mentally ill that expressly provided for a right to a jury in some cases, but not in others. In both of these cases, the courts found that the statutory schemes created arbitrary or irrational distinctions.