**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Maria Luisa Pereida NIEBLAS,**
**Defendant–Appellant.**

**No. 96–10324.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 16, 1997 *.

Decided June 6, 1997.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.     R. 34–4 and Fed. R.App. P. 34(a).

David A. Aguilar, Tucson, AZ, for defendant-appellant.

Tyrone Mitchell, Assistant United States Attorney, Tucson, AZ, for plaintiff-appellee.

Before D.W. NELSON, FERNANDEZ, Circuit Judges, and MOLLOY,** District Judge.

** The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## OPINION

FERNANDEZ, Circuit Judge:

Maria Luisa Pereida Nieblas appeals the district court's revocation of her probation and imposition of a sixty-month term of imprisonment. Nieblas had been on probation as part of her sentence for conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court determined that she violated the terms of her probation by associating with a known drug trafficker. She claims that her right to a *Miranda*[1] warning was violated and that her sentence was too long. We affirm.

## BACKGROUND

On February 19, 1993, Nieblas pled guilty to possession with intent to distribute cocaine. Although she faced a sentence of 108 months to 135 months under the Guidelines, the district court departed downward and sentenced her to five years probation.[2] Among the conditions of her probation were requirements that she: (1) answer inquiries of the probation officer truthfully, and (2) not associate with any person engaged in criminal activity or with any person convicted of a felony unless her probation officer granted her specific permission to do so. Nieblas agreed to those terms.

On March 29, 1996, Nieblas's probation officer was told that customs agents suspected that a known drug trafficker was transacting business out of the Nieblas residence. The probation officer called her and scheduled an interview at the probation office in order to discuss the matter. Customs agents were present during the interview and Nieblas admitted that the person in question was a drug trafficker. She said that she had witnessed conversations about the sale of drugs both over the telephone and in face-to-face meetings at her residence.

On May 6, 1996, the probation office filed a petition to revoke Nieblas's term of supervi-

2. The court's departure was based upon the government's USSG § 5K1.1 motion.

sion on the basis that she had violated a probation condition by associating with a known drug trafficker. The district court held an evidentiary hearing, at which the probation officer and customs agent testified that Nieblas had admitted to witnessing drug transactions conducted by others in her home. She testified that the alleged drug trafficker was living with her, but denied witnessing any drug transactions. She also claimed that she was coerced by the threat of prison if she did not give information to the customs agents who were at the probation interview.

Nieblas was not charged with any offense in connection with the alleged drug transactions conducted by others in her residence. However, the district court revoked her probation and sentenced her to sixty months imprisonment. This appeal ensued.

## STANDARD OF REVIEW

■ "Whether a defendant was constitutionally entitled to *Miranda* warnings is an issue of law reviewed de novo." *United States v. Turner,* 28 F.3d 981, 983 (9th Cir. 1994); *see United States v. Khan,* 993 F.2d 1368, 1375 (9th Cir.1993). We also review de novo the district court's interpretation and application of the United States Sentencing Guidelines. *See United States v. Shrestha,* 86 F.3d 935, 938 (9th Cir.1996); *United States v. Redman,* 35 F.3d 437, 438 (9th Cir.1994).

## DISCUSSION

### A. *Right to Miranda Warning*

■ Nieblas argues that she was deprived of a *Miranda* warning during the probation interview. A *Miranda* warning is required for custodial interrogations. *See Minnesota v. Murphy,* 465 U.S. 420, 429–31, 104 S.Ct. 1136, 1143–44, 79 L.Ed.2d 409 (1984); *United States v. Andaverde,* 64 F.3d 1305, 1310 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1055, 134 L.Ed.2d 199 (1996); *United States v. Kilgroe,* 959 F.2d 802, 804 (9th Cir.1992); *United States v. Booth,* 669 F.2d 1231, 1237–38 (9th Cir.1981). However, "custody" under *Miranda* has been "narrowly circumscribed." *Murphy,* 465 U.S. at 430,

104 S.Ct. at 1144. Because Nieblas voluntarily appeared at the probation office for the interview, which was arranged by appointment, and because she was free to leave, it was not a "custodial interrogation" that would trigger her *Miranda* rights. *See id.* at 433, 104 S.Ct. at 1145 (distinguishing custodial interrogations from probation interviews); *Andaverde,* 64 F.3d at 1310–11 (noting that probation officers need not issue *Miranda* warnings to probationers in noncustodial meetings).

■ Moreover, a probationer generally has no Fifth Amendment privilege regarding questions relevant to the status of her probation. *See Murphy,* 465 U.S. at 434–35, 104 S.Ct. at 1146; *United States v. Gonzalez–Mares,* 752 F.2d 1485, 1489–90 (9th Cir.1985). In *Murphy,* the probationer argued that he was compelled to make self-incriminating disclosures by threat of revocation of his probation. The Supreme Court stated:

> A State may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution.

*Murphy,* 465 U.S. at 435, 104 S.Ct. at 1146. Nieblas had an obligation under the terms of her probation to respond truthfully to questions concerning her association with a person engaged in criminal activity. Indeed, that was a condition of her probation.

■ Even if information is obtained from a probationer upon threat of revocation of probationary status, there is no valid claim of a *Miranda* violation under the circumstances presented here. *See Murphy* 465 U.S. at 435 n. 7, 104 S.Ct. at 1146 n. 7. The information gleaned from Nieblas during the interview was not elicited for the purpose of charging her with a new crime, nor was she charged with one. Its use in the revocation hearing, which is not a criminal proceeding, did not violate *Miranda. See id.* at 434–35 & n. 7, 104 S.Ct. at 1146 & n. 7. Thus, the district

court did not err when it admitted the evidence gathered during the interview.[3]

## B. *Sentence*

Nieblas also argues that the district court erred when it sentenced her to a sixty-month term. She asserts that the court failed to consider the three-to-nine month imprisonment·range for a Grade C probation violation, which is suggested in the Guidelines policy statement. *See* USSG §§ 7B1.1(a)(3), p.s., 7B1.4(a), p.s.[4]

If a district court finds that a defendant violated a condition of probation, it may "revoke probation and impose any sentence that initially could have been imposed." USSG Ch.7, Pt.A (2)(a), intro. comment.; *see* 18 U.S.C. § 3565(a)(2); *United States v. Plunkett*, 74 F.3d 938, 940 (9th Cir.) (trial court has "discretion to sentence a probation violator to the range of sentences available at the time of the original sentencing"), *amended by* 94 F.3d 517 (9th Cir.1996); *United States v. Redmond*, 69 F.3d 979, 981–82 (9th Cir.1995) (district court could properly impose sentence initially available for underlying offense); *United States v. Forrester*, 19 F.3d 482, 485 (9th Cir.1994) (trial court was free to sentence probation violator to the low end of the applicable range for the underlying offense).

■ However, when the district court imposes a sentence after revoking probation, it must consider the relevant Guideline policy statements. *See United States v. Hyde*, 92 F.3d 779, 780 n. 2 (9th Cir.1996), *cert. granted*, —— U.S. ——, 117 S.Ct. 759, 136 L.Ed.2d 695 (1997); *United States v. Contreras*, 63 F.3d 852, 855–56 (9th Cir.1995); *Forrester*, 19 F.3d at 484; *cf. Redman*, 35 F.3d at 441 (court is required to consider sentencing methodology suggested in Guideline commentary).

■ The probation revocation policy statement does suggest what will usually be the appropriate sentencing range upon revocation of probation. *See* USSG § 7B1.4(a), p.s. However, it adds, "[p]rovided, that ... [w]here the minimum term of imprisonment required by statute, if any, is greater than the maximum of the applicable range, the minimum term of imprisonment required by statute shall be substituted for the applicable range." USSG § 7B1.4(b)(2), p.s.

The commentary does not further explain when the district court should follow the policy statement in § 7B1.4(a) and when it should follow the statement in § 7B1.4(b)(2), but then further explanation is not really necessary. Upon revocation of probation, the district court imposes a sentence for the original offense. It follows that the court usually cannot go below the minimum statutory sentence for that offense.

That is made clear when the Guideline provision that applies to the initial sentencing for offenses is considered. It similarly states that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." USSG § 5G1.1(b). The commentary follows up on that rather clear statement with the following example: "If the applicable guideline range is 41–51 months and there is a statutorily required minimum sentence of 60 months, the sentence required by the guidelines under subsection (b) is 60 months...." USSG § 5G1.1, comment. Similarly, if the applicable policy statement range is three-to-nine months and there is a statutorily required minimum sentence of sixty months, the sentence suggested by the policy statement under § 7B1.4(b)(2) is sixty months. Thus, the district court did not err. In fact, to have imposed a lesser sentence, it would have had to both reject the policy statement and depart from the statutory minimum.

This also resolves Nieblas's claim that the district court erred when it did not state its reasons for deviating from the policy statements. The policy statement in USSG

---

**3.** On appeal, Nieblas argues for the first time that her probation officer acted as a "stalking horse" for customs agents. However, we do not consider arguments raised for the first time on appeal absent exceptional circumstances not present here. *See United States v. Flores–Payon*, 942 F.2d 556, 558 (9th Cir.1991).

**4.** All references in this part of the opinion are to the November 1, 1995 version of the Guidelines.

§ 7B1.4 contains *both* the revocation table in part (a) *and* the additional provisions which modify the table in part (b). Thus, the district court had nothing to explain because it did not deviate from the policy statement. Indeed, the outcome was projected by the policy statement itself. Under the policy statement for the sentencing of probation violators, which the district court followed to the letter, she must serve sixty months imprisonment. *See* USSG § 7B1.4(b)(2), p.s.

AFFIRMED.