# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1908

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

JAMES CRANLEY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-CR-222—**Lynn Adelman**, *Judge.*

_____

ARGUED SEPTEMBER 23, 2003—DECIDED NOVEMBER 19, 2003

_____

Before POSNER, MANION, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* James Cranley, indicted for federal firearms-related offenses, moved to suppress the confession that he had given to an agent of the federal Bureau of Alcohol, Tobacco, and Firearms. The district judge granted the motion, and the government appeals.

Cranley had been convicted in a Wisconsin state court of misdemeanor theft and had been placed on probation. Among the terms of his probation was a requirement that he report to his probation officer "as directed for scheduled or unscheduled meetings," and he was also required to "provide true and correct information verbally and in writing, in response to inquiries by the [probation] agent." A BATF agent traced several guns to Cranley, learned he

was on probation, and asked Cranley's probation officer to arrange a meeting at which the agent could question Cranley about the guns. She did so, explaining to Cranley that a BATF agent wanted to talk to him about guns. The meeting was held in a conference room at a local probation office with just Cranley, the probation officer, and the agent present. The room was unlocked, but to leave the probation office Cranley would have had to have been buzzed out by a guard. The meeting lasted an hour. The agent wasn't satisfied with Cranley's answers to his questions about the guns, and he asked the probation officer to arrange another meeting, in the same room, and she did so. At this meeting, which differed from the first only in that it lasted a half hour or hour longer and the probation officer was not present, Cranley gave a full confession, but was permitted to leave without being arrested. Prior to either the first or the second meeting (we do not know which), the probation officer had reminded him of his duty to answer questions truthfully. He was not given *Miranda* warnings at either meeting; nor did he invoke his Fifth Amendment privilege not to be compelled to incriminate himself.

The district judge ruled that Cranley had not been in custody and therefore had not been entitled to the *Miranda* warnings. But the judge thought that Cranley's Fifth Amendment privilege had been infringed because there was an implicit threat that if he refused to answer the BATF agent's questions his probation would be revoked and he would be sent to prison.

Cranley advances an alternative ground for upholding the suppression of his confession, namely that he was in custody and therefore was entitled to the *Miranda* warnings. As a matter of logic and good sense, it would seem that a district court's finding that a defendant was or was not in custody when he made a statement that the prosecution wants to use against him must stand unless the finding was

clearly erroneous. *United States v. Humphrey*, 34 F.3d 551, 558 (7th Cir. 1994) (concurring opinion). That is the usual scope of appellate review of applications of a legal standard to the facts, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-05 (1990); *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 307-08 (7th Cir. 2002); *United States v. Frederick*, 182 F.3d 496, 499-500 (7th Cir. 1999); *Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir. 1995), and we cannot think of a good reason for an exception when the legal standard is custody. Whether a particular set of facts adds up to custody—that is, to the defendant's reasonably believing himself unable to leave without the permission of the police, *Stansbury v. California*, 511 U.S. 318, 322-23 (1994) (per curiam); *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984); *United States v. Scheets*, 188 F.3d 829, 841 (7th Cir. 1999)— will vary unpredictably from case to case, so that the appellate court's primary duty of prescribing uniform rules is not engaged by its having to rule on the existence of custody in a particular case. But we bow to the weight of contrary authority, e.g., *United States v. Jackson*, 189 F.3d 502, 509 (7th Cir. 1999); *United States v. Mancillas*, 183 F.3d 682, 701-02 (7th Cir. 1999); *United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir. 1998); *United States v. Yusuff*, 96 F.3d 982, 987-88 (7th Cir. 1996), and so give the district court's ruling plenary review.

With reluctance, given the coercive atmosphere and the pressure on Cranley to talk in order to avoid jeopardizing his probation, we accept the district court's finding that he was not in custody. We are influenced by the fact that Cranley's lawyer failed to tell us (and admitted at argument that he did not know) the character of the building in which the probation office in Sturtevant, Wisconsin, is located. If the office shares the building with the local jail or police department, or even a courthouse, that is one thing, but if it shares it with offices unrelated to law enforcement, such as

the department of motor vehicles or of natural resources, that is quite another, muting the impression that the probation service is a branch of the state correctional authority. In fact it appears from discreet inquiry that the probation office shares the building with the state's departments of transportation and natural resources rather than with law enforcers.

Cranley would have been reluctant to break off an interview by a police officer, but that would have been true if the BATF agent had accosted him on the street outside. He could, however, have asked the agent, when the questioning got hot, "Am I under arrest or am I free to leave?" Had he done that we would know from the answer whether he was in custody. His failure to ask, given the location of the interview and the absence of the usual indications of police custody, precludes a finding of custody, in light of such cases as *Minnesota v. Murphy*, 465 U.S. 420, 433 (1984); *United States v. Humphrey*, *supra*, 34 F.3d at 554: *United States v. Hayden*, 260 F.3d 1062, 1066-67 (9th Cir. 2001); *United States v. Howard*, 115 F.3d 1151, 1154-55 (4th Cir. 1997); *United States v. Nieblas*, 115 F.3d 703, 704-05 (9th Cir. 1997), and *United States v. Ruggles*, 70 F.3d 262, 264-65 (2d Cir. 1995), all closely in point. (Only *United States v. Byram*, 145 F.3d 405, 406, 409 (1st Cir. 1998), tugs in the opposite direction.) These cases are perhaps not entirely realistic, and may reflect a subterranean dissatisfaction with the *Miranda* rule. But we are not disposed to buck such a long list of cases, especially when their *fons et origens* is a Supreme Court decision (*Murphy*).

On whether Cranley's Fifth Amendment privilege was violated, we have some doubt whether the question would even arise under a rational system of criminal-law enforcement. Our system seems to critics irrationally complex,

and not tethered very closely to common sense either. It has been argued with some force that an innocent defendant would rather be tried under the European system of criminal justice than under the American, and a guilty defendant under the American system rather than the European. William T. Pizzi, *Trials without Truth: Why Our System of Criminal Trials Has Become an Expensive Failure and What We Need to Do to Rebuild It* (1999).

Criminal defendants are free to waive constitutional rights, including the right not to be forced to incriminate themselves. They do it all the time, for example in pleading guilty, which in fact is the mode of conviction in the vast majority of criminal cases in America. At least as an original matter it would seem that Wisconsin courts should be allowed to require as a condition of probation that every person admitted to probation waive his Fifth Amendment right and answer all questions put to him by law enforcement officers concerning his criminal conduct. Cf. *United States v. Ross*, 9 F.3d 1182, 1190-91 (7th Cir. 1993), vacated on other grounds, 511 U.S. 1124 (1994); *Asherman v. Meachum*, 957 F.2d 978, 982-83 (2d Cir. 1992) (en banc).

Of course there are what are called "unconstitutional conditions." *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 674-75 (1996); *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994); *Burgess v. Lowery*, 201 F.3d 942, 946-47 (7th Cir. 2000). Although Wisconsin doesn't have to provide a probation option to convicted criminals at all, it could not condition the option on the probationer's being a white man or a non-Jew. But to say to a convicted criminal we will not let you substitute freedom for imprisonment unless you agree to give a full accounting of any criminal behavior in which you have engaged seems a reasonable condition to attach to probation. Granted, it would be in tension with language in *Minnesota v. Murphy, supra*, 465 U.S. at 435-37,

as interpreted in such cases as *Mangarella v. State*, 17 P.3d 989, 992-93 (Nev. 2001); *State v. Eccles*, 877 P.2d 799, 800-01 (Ariz. 1994), and *Gyles v. State*, 901 P.2d 1143, 1148 (Alaska App. 1995). But American law doesn't stand still. Decisions subsequent to *Murphy*, such as *Griffin v. Wisconsin*, 483 U.S. 868, 874-75 (1987), and *United States v. Knights*, 534 U.S. 112, 119-20 (2001), evince a greater willingness to enforce terms attached to conditional release, though neither involved the right not to be compelled to incriminate oneself.

In *Griffin,* the Supreme Court permitted dilution of the Fourth Amendment's "probable cause" requirement because "a State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." 483 U.S. at 873-74. The Court added that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only. . . conditional liberty properly dependent on observance of special [probation] restrictions,' " *Id.* at 874, quoting *Morissey v. Brewer*, 408 U.S. 471, 480 (1972). California has gone further: "When involuntary search conditions are properly imposed, reasonable suspicion is no longer a prerequisite to conducting a search of the subject's person or property. Such a search is reasonable within the meaning of the Fourth Amendment as long as it is not arbitrary, capricious or harassing. . . . [T]he government's action is triggered by defendant's own conduct. The existence of this triggering event—the crime which results in conviction or juvenile adjudication—creates the compelling need for government intervention and diminishes any reasonable expectation of privacy." *People v. Reyes*, 968 P.2d 445, 450 (Cal. 1998). And it has long been understood that a fundamental and unchallenged condition of probation is that the probationer surrender his right to trial by jury should the government seek revocation, and

thus imprisonment. *Minnesota v. Murphy*, *supra*, 465 U.S. at 435 n. 7; *United States v. Czajak*, 909 F.2d 20, 23-24 (1st Cir. 1990); *Morgan v. Wainwright*, 676 F.2d 476, 481 (11th Cir. 1982); *United States v. Nagelberg*, 413 F.2d 708, 709-10 (2d Cir. 1969).

A person untutored in the baroque structure that is the modern U.S. system of criminal procedure might have supposed that when as a condition of probation Cranley agreed to "provide true and correct information verbally and in writing, in response to inquiries by the agent," he surrendered his Fifth Amendment privilege and with it his right to *Miranda* warnings, since their purpose is to back up the privilege by making it less likely that it will be forfeited through ignorance. *New York v. Quarles*, 467 U.S. 649, 654 (1984); *United States v. Gupta*, 183 F.3d 615, 617 (7th Cir. 1999); *Winsett v. Washington*, 130 F.3d 269, 275 (7th Cir. 1997); *United States v. Bautista*, 145 F.3d 1140, 1146 (10th Cir. 1998); *United States v. Sullivan*, 138 F.3d 126, 130 (4th Cir. 1998). It is such a natural condition that the district judge thought that Cranley *must* have believed that his probation would be revoked if he refused to answer the BATF agent's questions—natural because Cranley would assume that failure to answer would indeed be grounds for revocation, though in fact it would be only if he had waived his Fifth Amendment right when he was admitted to probation. As a matter of fact, Wisconsin does require probationers to answer questions put to them by law enforcement authorities, but grants them immunity from use of the answers in evidence against them. *State ex rel. Tate v. Schwarz*, 654 N.W.2d 438, 443-44 (Wis. 2002); *State v. Evans*, 252 N.W.2d 664, 668-69 (Wis. 1977); *State v. Carrizales*, 528 N.W.2d 29, 32 (Wis. App. 1995).

However these larger issues be resolved, we disagree with the district judge that Cranley talked to the agent only because he was afraid that if he didn't do so his probation

would be revoked. The suggestion is implausible, because if his probation were revoked he would face only 47 days in prison, while if he confessed to federal firearms violations he would face a much longer term. But what is more important is that the Supreme Court held in *Minnesota v. Murphy, supra,* a case nearly identical to this one, that fear of revocation is not a ground for ruling that a probationer's confession deprived him of his Fifth Amendment privilege. It is one thing if the police tell the probationer that unless he talks his probation will be revoked; that places a price on his invoking the privilege that the Court thought excessive. 465 U.S. at 435; *United States v. Humphrey, supra,* 34 F.3d at 554-55; *United States v. Frierson,* 945 F.2d 650, 657-58 (3d Cir. 1991). That did not happen here; and the Court in *Murphy* held that the lesser price that consists of a merely plausible fear that invoking one's Fifth Amendment privilege will get one into trouble with the probation authorities is not a heavy enough penalty to excuse the failure to assert the privilege.

The only difference between this case and *Murphy* is that here the questions that elicited the defendant's confession were put by a police officer rather than, as in that case, by the probation officer. We cannot see what difference that makes, given the reasoning of *Murphy,* legalistic as it may seem. The Court thought there was no difference between being ordered to show up for questioning at the probation office and being summoned to testify before a grand jury. If the grand jury witness thinks his answers are going to incriminate him and therefore he doesn't want to be questioned, he has to assert his Fifth Amendment right. He can't not do so and then later seek to suppress his answers on the ground that he was afraid that if he "took the Fifth" it would get him into trouble with the prosecutor. Probably it would—though less trouble than if he confessed. It is the same here. Cranley had to show up for the interview, but he could decide whether it would be better for him to confess

or to take the Fifth, and he did the former and will not now be heard to complain of the consequences. He knew what the interview would be about and who would be doing the interviewing. That gave him a better opportunity to plan an appropriate response than if, as the district court thought would have been less coercive, he had not been told and instead the probation officer had sprung the questions about guns on him when he arrived not knowing why he'd been summoned.

Realistically, it is more likely that a grand jury witness will be aware of his right to claim the Fifth Amendment privilege and that he will forfeit the right if he fails to invoke it than that a probationer will know that he has a Fifth Amendment privilege, because the former is more likely than the latter to have consulted a lawyer in advance of his appearance. But that is a distinction the Supreme Court declined to draw in *Murphy*. 465 U.S. at 427, 431-32.

It is always something of a puzzle why criminals confess. Probably Cranley realized that the BATF had the goods on him and so would nail him even if he clammed up, but that if he confessed he might get points for having cooperated. No matter. His failure to assert his Fifth Amendment privilege forfeited it, and so the order of the district court suppressing his confession must be

REVERSED.

A true Copy:

     Teste:

                         _____
                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*