NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued September 14, 2010
Decided December 8, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| Nos.  09-2834,  09-2854,  09-2912,  09-3565, and 09-3589 | Appeals from the United States District Court for the Western District of Wisconsin |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 3:08-cr-00159-jtm |
| *v.* | James T. Moody, *Judge*. |
| BRUCE RAINEY, JEAN SONNENBERG, GEORGE RAINEY, MARGRETTE COBB, and ANDREW SONNENBERG, *Defendants-Appellants*. | |

**O R D E R**

The appellants in these cases all pled guilty pursuant to written plea agreements to conspiracy to possess cocaine base with intent to distribute and to distribute cocaine base, in violation of 21 U.S.C. § 846, from January 1, 2001 through September 2008 in and around the St. Croix reservation in northern Wisconsin.  The appellants raise joint issues and individual issues in challenging their sentences.  We have consolidated their appeals.

Jointly, the appellants argue that the sentencing court did not take into account the disparate treatment of powder cocaine and crack cocaine offenses under the Sentencing Guidelines when they were sentenced within (or in one case, slightly below) the advisory guideline ranges. All of the appellants except Andrew Sonnenberg also argue that the sentencing court did not adequately consider the 18 U.S.C. § 3553(a) factors and insufficiently explained its reasoning for imposing within-guidelines sentences. We disagree on both of these issues and affirm the district court on these bases.

In addition, Margrette Cobb raises individual issues on appeal. She challenges her conviction based on the court's admission of statements she made to law enforcement officers and challenges her sentence because she believes that her criminal history category over-represented the seriousness of her prior conviction. On those issues, we disagree and affirm the district court's decision. By separate published opinion today, we remand the sentence of co-conspirator Bruce Sonnenberg for resentencing.

*Factual Background*

On October 22, 2008, a grand jury issued a thirteen-count indictment charging the appellants as members of a conspiracy to purchase crack cocaine, usually in Minneapolis and St. Paul, Minnesota; to transport the cocaine to northern Wisconsin; and to sell the cocaine to individuals in St. Croix. These five appellants, most of whom are family members, lived in and around St. Croix. Jean Sonnenberg was the leader of what was otherwise a "flat conspiracy," one with no hierarchy, of family members and friends. She was responsible for orchestrating the purchases and transportation of the crack cocaine and she involved most of her children, including minor children, in her drug trafficking activities. The other appellants are: Bruce and Jean Sonnenberg's son, Andrew Sonnenberg; Bruce Rainey and George Rainey, Jean Sonnenberg's children from a previous marriage; and Margrette Cobb, George Rainey's partner at the time of the conspiracy.

The appellants were sentenced in July and October 2009. Based on controlled drug buys, the drug amount included in each of the presentence reports was at least 1.5 kilograms of crack cocaine, but not more than 4.5 kilograms of crack cocaine, and the offense conduct described in each of the presentence reports was identical. There was some variation in the appellants' criminal histories. All of the appellants argued for below-guideline mandatory minimum sentences of 120 months. Each of the sentencing memoranda, with the exception of George Rainey's, asked the court to consider the defendant's personal history and characteristics and remorse for his or her actions. All of the appellants, with the exception of Andrew Sonnenberg, asked the district court to take into account the disparity in the length of sentences for crack cocaine and powder cocaine offenses.

*Procedural History and Standard of Review*

When sentencing after *United States v. Booker*, 543 U.S. 220 (2005), the sentencing court must first calculate the advisory sentencing guideline range and then "must apply the criteria set forth in [18 U.S.C.] § 3553(a) to the facts and circumstances of the defendant's particular case." *United States v. Bush*, 523 F.3d 727, 729 (7th Cir. 2008); *United States v. Omole*, 523 F.3d 691, 697.

The district court ultimately sentenced all of the appellants within or below the respective advisory sentencing guideline ranges. In reviewing a district court's sentencing decisions, we engage in a two-step process. We first evaluate whether the sentencing court committed a procedural error, and then we consider the substantive reasonableness of the sentence. See *United States v. Hall*, 608 F.3d 340, 346 (7th Cir. 2010), citing *Omole*, 523 F.3d at 697-98 (7th Cir. 2008). Procedural error is a legal question reviewed de novo. See *United States v. Pape*, 601 F.3d 743, 746 (7th Cir. 2010), citing *United States v. Smith*, 562 F.3d 866, 872 (7th Cir. 2009). Reasonableness of a sentence is reviewed under an abuse-of-discretion standard. See *United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009), citing *Gall v. United States*, 552 U.S. 38 (2007).

At the sentencing hearings, the parties agreed that the sentencing guidelines were correctly calculated for all of these appellants. Because the sentences were all within or below the properly calculated guidelines range, they are presumed reasonable on appeal by the defendant. See *Rita v. United States*, 551 U.S. 338, 347 (2007); *Poetz*, 582 F.3d at 837, citing *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008).

We first turn to two joint issues, whether the court failed to consider properly (1) the disparity of crack cocaine and powder cocaine sentences under the sentencing guidelines and (2) the other factors applicable under 18 U.S.C. § 3553(a).

*Analysis*

I.  *The Crack/Powder Sentencing Disparity*

The appellants argue that the district court erred procedurally and substantively when it chose not to treat the differences in crack and powder sentences as a mitigating factor, particularly when such sentences are measured against factors set forth in 18 U.S.C. § 3553(a). This argument is not persuasive. Under *Booker*, district courts are entitled to vary from the sentencing guidelines for crack cocaine and powder cocaine based on a policy disagreement with the guidelines. *Kimbrough v. United States*, 552 U.S. 85 (2007); *Spears v. United States*, 129 S. Ct. 840, 844 (2009). But district courts are not *required* to disagree with the guidelines and accept a defendant's argument that sentences for crack cocaine and powder cocaine should be on par. See *United States v. Curb*, No. 09-2510, 2010 WL 4608381 at *5, — F.3d —, — (7th Cir. Nov. 16, 2010) ("We have never held that a district judge was required to reject the Sentencing Guidelines applicable to crack cocaine. A district judge's reasoned agreement with an advisory sentencing guideline will not be deemed unreasonable on appeal.*")*, citing *United States v. Scott*,

555 F.3d 605, 610 (7th Cir. 2009) ("If a district court may deviate from the Guidelines based on its disagreement with the Sentencing Commission's policy, it is equally within its authority to adhere to the Guidelines because it concurs with the policy judgment the Guidelines reflect.").

As a preliminary matter, the sentencing transcripts may be considered together because the appellants were members of a single conspiracy sentenced by one judge. While the judge gave individualized attention to each of the criminal defendants, he also considered the parties together as partners in the same crime. In the later sentencing hearings, the judge and counsel often referred to the earlier sentences and hearings for the other defendants. The fact that the judge did not discuss the crack/powder disparity argument at the same length in every sentencing does not mean that he did not adequately consider the issue.

We disagree with the appellants' suggestion that the sentencing judge did not understand or appreciate the advisory nature of the guidelines or the crack/powder disparity issues. The district judge is a veteran judge who made it clear in the sentencing proceedings that he understood the issues at stake and that he simply disagreed with the defendants' arguments for lower sentences.

The appellants claim, for example, that in the sentencing hearings of Bruce and George Rainey, the judge's questions to Bruce Rainey's counsel, as well as the fact that the judge did not explicitly acknowledge the sentencing disparity argument, "evince a failure to appreciate the advisory nature of the guidelines." But the judge acknowledged that he knew the history of the sentencing disparity issue, which clearly includes a judge's discretion to consider the disparity at sentencing. The judge asked the defense counsel how long Congress had been discussing the sentencing disparity issue and then answered his own question: "Ten years." B. Rainey Sent. Tr. 14. Defense counsel later stated, "right now what I do see is – is an incredible amount of disparity in sentencing for these same exact drugs and all the arguments that Congress relied on in the late 80s and early 90s to make that disparity have been proven completely wrong, Your Honor, and the Sentencing Commission, when it made its 100-to-1 – you know this history better than I do." The sentencing judge then replied: "Sure. Probably not better, but I know it." *Id*. Any suggestion that the judge was unaware of the crack/powder disparity or his discretion under *Kimbrough* is simply groundless.

The appellants argue further that in the case of Bruce Sonnenberg, the court was unreasonable and unrealistic in its discussion of the crack/powder disparity during the sentencing hearing, particularly with respect to how Congress would resolve the sentencing disparity. The appellants cite this exchange to show the judge's supposed unreasonableness:

THE COURT: Let me ask a question. I understand the disparity argument between powder and crack, but Congress makes the laws, right?
MR. JONES: Yes.

THE COURT: Who's to say that you're right and Congress is wrong? I know many experts have testified that crack and powder, the effect on the human system is similar, but who's to say that Congress won't increase the powder to crack? I've been around this business for about forty some odd years and I've never seen a Congressman, because he doesn't want to be called soft on crime, reduce penalties. Have you?

B. Sonnenberg Sent. Tr. 26. The appellants argue that the sentencing judge erred because of the "uncontestable direction that crack cocaine sentencing guidelines are headed." However, the judge's willingness to discuss this issue during sentencing shows his awareness of and interest in the issue, and that he was fully engaged in the matter before him. All are now aware of the Fair Sentencing Act of 2010, of course, in which Congress reduced but did not eliminate the crack/powder disparity. See Pub. L. No. 111-220, 124 Stat. 2372 (2010). But no one expects sentencing judges to make decisions based on laws that Congress might enact in the near future. Furthermore, this court has held that the Fair Sentencing Act is not retroactive. *United States v. Bell*, —F.3d—, —, 2010 WL 4103700, at *10 (7th Cir. Oct. 20, 2010).

The appellants argue that it was inappropriate for the Court to rely in another instance on anecdotal experience about crack addicts. The appellants cite this exchange, also from the end of the Bruce Sonnenberg hearing:

> MR. JONES: You sentenced Mr. Sonnenberg to 292 months imprisonment.
> THE COURT: I did.
> MR. JONES: Which is at the bottom of his guideline range.
> THE COURT: Yes.
> MR. JONES: I also heard you mentioning you find no reason for a variance below it. If I may ask for clarification, does that include then you see no basis as it relates to a crack/powder disparity to go below his guidelines in this case?
> THE COURT: I just don't see it.
> MR. JONES: Okay. I just need to – since it wasn't addressed specifically, I thought I'd ask. Okay. Thank you, Your Honor.
> THE COURT: Yeah. Actually you know I've had crack addicts and powder addicts tell me that well, now I can get off powder, but I could never get off crack. You can send me away for however many months you want, but when I get out, I'll sell my mother for another hit. Isn't that awful?
> MR. JONES: It is.
> THE COURT: Yeah. Anything else?
> MR. JONES: Nothing else, Your Honor.

B. Sonnenberg Sent. Tr. 47. In the context of the judge's other comments about the crack/powder disparity showing that he was fully aware of his discretion with respect to the crack/powder issue, we do not find this exchange troubling. The judge understood that he had

discretion under *Kimbrough*. He considered the crack/powder disparity argument, and he rejected it. He was under no obligation to treat the disparity as a mitigating factor. We find no error in the court's treatment of this issue.

II.  *The 18 U.S.C. § 3553(a) Factors*

The appellants argue that the district court committed procedural error by treating the guidelines as presumptively reasonable and by failing to consider the applicable § 3553(a) factors. The appellants also challenge the reasonableness of the sentences by arguing that the court should have imposed the mandatory minimum ten years, based on the crack cocaine/powder cocaine disparity, as well as personal mitigating factors. The appellants further argue that the court did not sufficiently explain its reasons for imposing within-guidelines sentences under *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) ("A rote statement that the judge considered all relevant factors will not always suffice; the temptation to a busy judge to impose the guidelines sentence and be done with it, without wading into the vague and prolix statutory factors, cannot be ignored"). We reject these arguments.

The transcripts of the six sentencing hearings reflect that the sentencing judge, a veteran judge with one of the heavier criminal dockets in this circuit, properly calculated the advisory sentencing guideline ranges (with the exception of Bruce Sonnenberg's sentence, as discussed in the separate opinion). The judge adequately considered the § 3553(a) factors for all appellants; imposed a reasonable sentence with respect to those factors for each appellant; and sufficiently explained his rationale for imposing the guidelines sentences.

The judge clearly understood his role in sentencing and sufficiently explained his sentencing decisions with respect to the § 3553(a) factors. While one of the appellants argued that the judge delivered a "boilerplate" statement, devoid of details, about the bases for his sentencing decisions, we find the judge's statements of explanation adequate, especially in the context of a set of sentencing transcripts in which the judge clearly engaged in thoughtful deliberation about each defendant's sentence as well as the conspiracy as a whole. The appellants do not raise any significant mitigating factors on appeal that were notably absent from the judge's statements at sentencing. See *United States v. Young*, 590 F.3d 467, 475 (7th Cir. 2009) (affirming a within-guideline sentence where the appellant failed to show that factors were "sufficiently meritorious to require explicit discussion by the court or to rebut the presumption of reasonableness" attached to a within-guidelines sentence). We consider each of the appellants' sentences in turn.

A.        *Jean Sonnenberg's Sentence*

With a criminal history of I, a total offense level of 38, and an advisory guideline range of 235 to 293 months, Jean Sonnenberg was sentenced to 235 months in prison. While she

acknowledged the seriousness of her offense, she argued that the district court should consider her argument that her part in the conspiracy was driven by financial necessity – her husband Bruce was an unemployed crack addict and an alcoholic, and she was motivated to provide financially for her family. Jean Sonnenberg argues that the district court committed procedural error by not taking into account the § 3553(a) factors when imposing her sentence. She challenges the reasonableness of the sentence by arguing that the judge should have imposed a shorter sentence in light of her traumatic personal history of poverty, physical and sexual abuse, and alcoholism; her lack of a criminal record; and a report from a forensic social worker detailing her personal history of victimization and abuse as well as information about her Native American tribe and reservation.

Jean Sonnenberg's procedural error argument is without merit. It is clear both from the sentencing transcripts and the written statement of reasons that the judge properly considered the § 3553(a) factors. The judge explicitly acknowledged her history of extreme poverty and abuse, her alcoholism, her lack of a criminal record, and her role in the conspiracy. He responded directly to her contention that she had taken part in the conspiracy to support her children and to ensure that they did not experience the same poverty she had experienced. "Her logic," the judge stated, "I guess, could be construed as commendable if it were even close to being the truth. In fact . . . I believe she used and emotionally damaged her children rather than . . . protect them, really all for money." J. Sonnenberg Sent. Tr. 15-16. The judge rejected the proposed 120-month sentence as inadequate only after extensively discussing her personal background, as well as her lack of a criminal record, the mitigating circumstances included in her sentencing memorandum, and her request for a below-guideline sentence. The transcript and the subsequent statement of reasons show that the judge considered the § 3553(a) factors and had a reasoned basis for the sentence he imposed.

Jean Sonnenberg argues that the sentence was unreasonable because the court did not take into account mitigating arguments such as her psychiatric problems and alcohol abuse. But the judge did take these factors into account, both at sentencing and in his written statement of reasons. The judge recounted that she "has abused alcohol and drugs for the majority of her life. She's gone through numerous drug and alcohol treatment programs. Obviously they didn't work." *Id*. at 16. In his written statement of reasons, the judge provided further discussion of these issues: "The defendant's lack of remorse for her crimes or the trauma she has caused her children is of great concern. She appears to be very immature in her decision making and behavior but sophisticated enough to operate a large scale drug conspiracy. She has abused alcohol and drugs the majority of her life. She has been afforded numerous drug/alcohol treatment programs." Such statements about the defendant's personal characteristics show the judge's attention to and consideration of the § 3553(a) factors. The explanations were sufficient, and the sentencing court committed no error in considering but rejecting Jean Sonnenberg's arguments for a below-guideline sentence.

B.      *George Rainey's Sentence*

With a criminal history category of III, a total offense level of 33, and an advisory guideline range of 168 to 210 months, George Rainey was sentenced to 168 months in prison. George Rainey joins the other appellants in arguing that the district court erred procedurally and substantively by failing to consider the applicable § 3553(a) factors. His argument is based primarily on the court's decision not to treat the crack cocaine/powder cocaine disparity as a mitigating factor.

The district court adequately considered the other § 3553(a) factors. George Rainey was the only appellant who did not ask the district court to consider his personal history and characteristics and remorse for his actions. He also did not speak at his own sentencing to suggest additional mitigating factors or remorse. Still, the judge acknowledged his family history, the fact that he continued to sell drugs even after his children were removed from the home, and the fact that he had previously completed substance abuse treatment on five occasions. The judge noted that "if he obtains legitimate employment, limits his involvement with his immediate family, he could also increase his chances of a successful integration back into his community." G. Rainey Sent. Tr. 8-9. The judge concluded by finding that, "considering the seriousness of this crime, the defendant's personal history and his characteristics, his rather extensive criminal record and all of the relevant factors that are set forth in Title 18 of the United States Code, Sec[tion] 3553 . . . the defendant's request for a sentence of 120 months imprisonment is just not persuasive and I choose not to do that because I believe such a sentence is just not warranted under the facts and circumstances of this case." *Id*. at 9. This statement, in the context of the judge's statements acknowledging George Rainey's family situation and past substance abuse, shows sufficient consideration of the § 3553(a) factors.

C.      *Bruce Rainey's Sentence*

With a criminal history category of V, an offense level of 33, and an advisory guideline range of 210 to 262 months, Bruce Rainey was sentenced to 210 months in prison. He argues that the district court erred procedurally and substantively in sentencing by failing to consider the applicable § 3553(a) factors. As with George Rainey, his argument is based primarily on the court's decision not to treat the crack cocaine/powder cocaine disparity as a mitigating factor.

With respect to the other applicable § 3553(a) factors, the judge noted that, having considered the seriousness of the crime, the defendant's criminal record, and the § 3553(a) factors, as well as mitigating circumstances presented in the sentencing memorandum, he did not find convincing the argument for a below-guideline sentence. "I just disagree with you and I choose not to [impose a below-guideline sentence] because I believe that that kind of sentence is really not warranted under the facts and circumstances of this case." B. Rainey Sent. Tr. 32.

Bruce Rainey argues on appeal that the court erred by not considering his struggles growing up in a family dependent on drugs for survival and on a reservation. He also argues that the court should have considered and commented on his efforts to step away from his family and drugs. We find these arguments unconvincing. The judge simply disagreed that a lower sentence was warranted in this case. The judge's dialogue with counsel and his statements that he considered the relevant factors show that he gave thoughtful consideration to the sentence, and we find the statements acknowledging the § 3553(a) factors sufficient.

D.       *Margrette Cobb's Sentence*

With a criminal history of III, an offense level of 33, and an advisory guideline range of 168 to 210 months, Margrette Cobb was sentenced to 160 months in prison.[1] She argues on appeal that the district court did not consider the factors listed in § 3553(a) or, if it did, that it misapplied those factors or did not give reasons for the sentence it imposed. Cobb argues that the district court provided only a "boilerplate statement" about the basis for its sentence. She further argues that the statement of reasons was too short and conclusory to allow for meaningful appellate review. We disagree.

This court takes into account the "totality of the circumstances" when considering whether a sentence is substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). In considering the totality of the circumstances, we find that the sentencing court acknowledged the seriousness of Cobb's crimes, her criminal record, her personal characteristics, and the mitigating circumstances set forth in her sentencing materials. The judge concluded "that her request for a sentence which does not deviate or vary from the applicable sentencing guidelines range is not persuasive because the mitigating circumstances that are described by the defendant in my judgment just don't warrant such a deviation or variance and so her request for such a deviance or variance is denied." M. Cobb Sent. Tr. 20. The court also commented on the defendant's age and discussed his hope for her rehabilitation in prison: "Hopefully she will take advantage of the resources available in the United States Bureau of Prison[s],

---

[1]The district court sentenced Cobb eight months below the sentencing guideline range pursuant to U.S.S.G. § 5K2.23, which allows for downward departures for time served on related offenses. At the time of sentencing, Cobb had already served time in state prison for conduct relevant to calculating her offense level in this case.

including substance abuse, mental health assessment and treatment programs as well as educational and vocational training programs while she is confined." *Id*. at 21. Such statements show that the court had considered Cobb's arguments and her particular circumstances in deciding on a sentence. The judge did not err in his consideration and explanation of the § 3553(a) factors in imposing Cobb's sentence.

E.          *Andrew Sonnenberg's Sentence*

With a criminal history of V, an offense level of 33, and an advisory guideline range of 210 to 262 months, Andrew Sonnenberg was sentenced to 210 months in prison. Andrew Sonnenberg argues only that his sentence was unreasonable because the court did not account for the crack cocaine/powder cocaine disparity, addressed above.

III.          *Margrette Cobb's Criminal History and Suppression Issues*

We turn now to the individual issues raised by Margrette Cobb. Her appeal raises two individual issues: first, that statements she made to government officials in the course of their investigation were in violation of her Fifth Amendment right against self-incrimination and should not have been admitted and, second, that her four criminal history points overstated the seriousness of her criminal record, resulting in an unreasonably long sentence. We disagree as to both issues.

A.          *Suppression of Statements*

Cobb argues that her conviction should be vacated based on the district court's refusal to suppress statements she made to law enforcement officers. Cobb argues that her statements were involuntary and that she made the statements because she feared that, if she did not do so, she would violate her probation. The district court held an evidentiary hearing and concluded that Cobb's statements were voluntary and admissible. Cobb's plea agreement preserved the Fifth Amendment issue for appeal. We find no error.

Cobb made the statements in an interview with detectives. Her probation officer, accompanied by a detective, went to Cobb's home and brought her to the probation office to do a urine test. Cobb completed the urine test – which usually would have been completed in her own home – and was brought to a waiting room. Approximately 40 minutes later, the probation officer told Cobb that "some law enforcement officials [wanted] to talk to her." Supp. Hearing Tr. 32. The probation officer testified: "I informed her that I wasn't aware of what the officers were there for. I informed her that I wasn't aware whether they were intending to arrest her and that they were there for issues that did not concern her parole." *Id*. at 33. The probation officer brought Cobb to a room where she was interrogated by two detectives.

The detectives testified that, while they did not give Cobb *Miranda* warnings, they told her that she was free to leave and that they could give her a ride home. The detectives closed the door but did not lock it. They provided a description of their investigation; told Cobb that she was a potential target; and asked for her cooperation in the investigation. Cobb then agreed to cooperate. The interview lasted 60 to 90 minutes, and the district court concluded that it was "conversational and non-confrontational." There was no testimony to the contrary. Following the interview, a detective drove Cobb home.

Cobb argues that the statements were involuntary because she feared that she would violate her probation if she did not answer the detectives' questions. As the district court noted, fear of revocation alone is not a sufficient ground for finding that a probationer's statement deprived her of her Fifth Amendment privilege against self-incrimination. See *Minnesota v. Murphy*, 465 U.S. 420, 438 (1984) (defendant's belief that his probation would be revoked for exercising his Fifth Amendment privilege "would not have been reasonable"); *United States v. Cranley*, 350 F.3d 617 (7th Cir. 2003) (fear of revocation of probation did not deprive defendant of Fifth Amendment privilege against self-incrimination). In *Cranley*, the probation officer alerted the defendant to the reason for the defendant's visit to the probation office, whereas Cobb was surprised by the real reason for her visit. However, the detectives' repeated assurances to Cobb that she was free to leave, and the fact that she was familiar with the probation office, support the district court's finding that the statements were voluntary. We accept the district court's finding that Cobb's fear of revocation of her probation was not reasonable given the circumstances of the interview and her familiarity with the probation and criminal justice system.

In cases where we have found statements inadmissible because a person's Fifth Amendment privilege against self-incrimination was violated, but where the suspect was not on probation, the totality of the circumstances was much more severe than in Cobb's case. Take the recent case of *United States v. Slaight*, 620 F.3d 816, 822 (7th Cir. 2010), where we found that the appellant was in custody and entitled to *Miranda* warnings:

> The key facts are the show of force at Slaight's home, the protracted questioning of him in the claustrophobic setting of the police station's Lilliputian interview room, and the more than likelihood that he would be formally placed under arrest if he tried to leave because the government already had so much evidence against him. These facts are incontrovertible and show that the average person in Slaight's position would have thought himself in custody. Any other conclusion would leave *Miranda* in tatters.

*Id*. Here, there was no coercive entry into Cobb's home – the probation officer and detective arrived and took her to the probation office, with which she was familiar, and detectives assured her she could leave any time and have a ride home.

While the fact that her probation officer brought her to the probation office ostensibly for a urine test, but actually for an interview with the detectives, could sound as though the detectives were attempting to use her probation to, as the district court phrased it, "pry cooperation out of Cobb," we accept the district court's finding, after it listened to the testimony, that Cobb's statements to the detectives were voluntary. Given the familiar setting of the probation office, the non-coercive way in which the probation officer and detective brought Cobb to the probation office, and the statements that the detectives made to Cobb that she was free to leave and would receive a ride home, the district court did not err by finding that she was not in custody nor coerced to make statements and that her statements should not be suppressed as evidence.

B.        *Cobb's Criminal History Issue*

Cobb argues that the district court abused its discretion and imposed a substantively unreasonable sentence when it did not depart downward from the advisory sentencing guidelines. She argues that her assigned criminal history category (III) overstated the seriousness of her earlier offenses. The defendant received two criminal history points from a 2002 conviction for possession of a small amount of marijuana. Two additional points were added because the defendant committed the offense for which she is now sentenced, less than two years after her release from jail. Cobb argues that criminal history category III is unnecessarily high, that the district court should have addressed this objection more specifically, and that there was no indication that the district court knew it had the authority to grant a variance on this basis. We are not persuaded.

The Guidelines themselves, in § 4A1.3, encourage a district court to depart downward from a recommended sentence if the court finds that "the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." At the same time, the sentencing court also has the discretion not to depart downward. *United States v. Abbott*, 30 F.3d 71, 73 (7th Cir. 1994).[2]

---

[2]Beginning with *United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005), we have said often that *Booker* rendered the Guidelines' concept of departures "obsolete." In a strict legal sense, that is correct, as was clear in *Johnson*, for example, which was written in terms of the legal question the appellate court decides when reviewing a sentence. Our label of "obsolete" should not have discouraged district courts from taking genuine guidance from the Guidelines, including their departure provisions, when exercising their discretion under 18 U.S.C. § 3553(a). In addition,

(continued...)

The sentencing court made clear that it simply was not convinced by Cobb's arguments for a lower sentence. After detailing Cobb's role in the conspiracy, her criminal record, and some of her personal history – such as her continued involvement in the drug trade after her children were removed from her home – the judge concluded that he found "her request for a sentence which . . . deviate[s] or var[ies] from the applicable sentencing guidelines range [unpersuasive] because the mitigating circumstances that are described by the defendant in my judgment just don't warrant such a deviation or variance." Cobb Sent. Tr. 20.

The district judge did not need to say more on the subject. Whether a criminal history category over-represents the seriousness of a record is a "stock argument" that the court is free to reject without explicit discussion. See *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008) (mitigating factors that are "nothing more than stock arguments that sentencing courts see routinely," for example, family ties, how a criminal history category over-represents the seriousness of a prior conviction, and the extent to which the defendant accepted responsibility, are the "type of argument that a sentencing court is certainly free to reject without discussion . . . . A court's discussion need only demonstrate its meaningful consideration of the [18 U.S.C.] § 3553(a) factors") (internal citations omitted). The judge gave meaningful consideration to the arguments meriting discussion. We find no error in Cobb's sentence.

*Conclusion*

In these appeals, the judgments of the district court are AFFIRMED.

---

[2](...continued)
effective November 1, 2010, Guideline Amendment 741 amended U.S.S.G. § 1B1.1 in response to our line of decisions. The amended guideline directs district courts to apply the three-step process: (1) calculate the offense level and criminal history categories; (2) consider whether a departure within the framework of the Guidelines is appropriate; and (3) consider all other factors under § 3553(a) to determine the final sentence.